**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**ALEXANDRIA DIVISION**

| | |
|---|---|
| **EDWARD RACHAL** | **CIVIL ACTION NO. 03-0246** |
| **-vs-** | |
| **UNITED STATES OF AMERICA** | **JUDGE LITTLE** |

### R U L I N G

This case comes before this court as a result of a denial of plaintiff's Federal Tort Claims Act demand. Neither of the parties contests the personal jurisdiction of the court in this matter. As this is a Federal Tort Claims Act case, subject matter jurisdiction is appropriate pursuant to 28 U.S.C. § 1346.

The plaintiff, Edward Rachal ("Rachal"), was 67 years old when he submitted himself to the Veterans Administration Hospital ("VA") in Pineville, Louisiana for a routine colonoscopy on 6 November 1998. There is no factual dispute as to what occurred when Rachal's body was invaded by a colonoscope administered by the VA physician, Eugene Balthazar, M.D. ("Balthazar"). Balthazar inadvertently caused a full thickness burn of Rachal's descending colon.

A medical malpractice case requires the plaintiff to show (1) that the doctor failed to meet the appropriate standard of care in performing the operation and (2) that the doctor's

negligence caused an injury to the plaintiff. Fusilier v. Dauterive, 764 So.2d 74, 79 (La. 2000).

With regard to the standard of care, the court must ask whether Rachal successfully proved "by a preponderance of the evidence that the doctor's treatment fell below the ordinary standard of care expected of physicians in his medical specialty." Martin v. E. Jefferson Gen. Hosp., 582 So.2d 1272, 1276 (La. 1991); see also D'Angelo v. Prechter, 899 So.2d 613, 616 (La. Ct. App. 2005). It is clear that Balthazar failed to meet this standard of care. Simply stated, Balthazar was not well versed in the operation of the exploratory instrument. He himself stated in his deposition that "I activated the foot pedal on the snare at a time that the foot pedal should not have been activated." (Balthazar Dep. 4:25-5:2, Sept. 23, 2003.) He further stated that "this was the first case that we had used a new cautery machine during the polypectomy, and the configuration of the foot pedal is different on the machine that I used in the configuration that I had previously used." Id. at 5:3-6. Accordingly, the first prong of the test has been met.

With regard to causation, "[a] defendant's conduct is considered to be a cause in fact of the injury if but for his conduct the harm would not have occurred, or his conduct is a substantial factor in bringing about the harm." Gladney v. Sneed, 742 So.2d 642, 645 (La. Ct. App. 1999). Furthermore, "[a] substantial factor need not be the only causative factor, it need only increase the risk; there can be more than one cause in fact of an accident." Id. Balthazar was in control of the instrumentality that caused Rachal's injury. Balthazar, in his own defense, suggests that Rachal's peregrinations during the procedure distracted him, so

much so that the pedal was accidently activated. (Balthazar Dep. 4:2-10.) It is clear from the record, however, that Balthazar's actions were the cause in fact of Rachal's injury. Accordingly, the second prong of the test has been met.

Courts generally use expert testimony to determine whether a physician violated the appropriate standard of care in medical malpractice cases. "[E]xpert witnesses who are members of the medical profession are necessary sources of proof in medical malpractice actions to determine whether the defendant doctor possessed the requisite degree of skill and knowledge, or failed to exercise reasonable care and diligence." Martin, 582 So.2d at 1277; see also Hyman v. E. Jefferson Gen. Hosp., 900 So.2d 124, 128 (La. Ct. App. 2005).

Professional analysis by expert I. Michael Leitman, M.D. ("Leitman"), clearly supports the conclusion that the actions of Balthazar did not comport with the standard of care required in this situation and were therefore negligent. Leitman found that "Balthazar continuously activated the electrocautery inappropriately." (Leitman Dep. 7:3-5, Sept. 10, 2005.) He concluded that "[t]his is the departure from the standard of care that I found in the care of Mr. Rachal." (Leitman Dep. 7:22-24.)

Subsequent to the colonoscopy, Balthazar recognized that he had erred and so advised his patient. The extent of the damage had not been determined, so Rachal was told to return to the VA hospital if he experienced pain or discomfort. And experience pain and discomfort he did. The acute abdominal pain was the reason for Rachal's visit to the emergency room of the VA hospital the next day, 7 November 1998. Tests confirmed the fact that the colon

3

had been perforated, which produced a peritonitic condition. Surgery was performed, followed by a ten day period of painful convalescence at the hospital.

The incision to correct the damage was the cause of another nightmare. The wound had to been left open, or nearly so, in order for the healing and draining of the site to be accomplished. Unfortunately, frequent infections occurred, exacerbating the condition of the surgical entry area. Rachal spent weeks tending to his surgical opening. Finally, the wound closed but not without leaving a hernia. Repair of that problem fell to G. L. Hovnatanian, M.D. ("Hovnatanian"). He performed corrective surgery in August of 2000 at a cost of $11,349.

Even counsel for the government observed at the conclusion of the trial that there were sufficient grounds to support the court's initial impression that the standard of care had been violated. Counsel for the government stated that administrative or bureaucratic reasons prevented him from simply admitting liability in the case.

As is probably evident to the reader, this is a quantum case. The evidence from the treating and professional expert leaves no doubt that the plaintiff suffered pain and discomfort after the colonoscopy, after the corrective surgery, and after the hernia repair. It is more probable than not that Rachal's misadventure from his treatment at the VA caused immediate and some long lasting pain and suffering.

In addition to pain, Rachal complains that the experience not only caused, and continues to cause, a reduction in his sexual prowess, but also limited and continues to limit his other activities of hunting, dancing, and house maintenance. We are not unmindful of

4

the fact that Rachal was 74 at the time of this trial and appears to be aging gracefully, but aging nonetheless. He is twice divorced and is living with a significant other in Lafayette, Louisiana. With her, he enjoys dancing and travel. He also continues to pursue deer hunting.

An appropriate award for damages, past, present and future is $120,000. We also award $11,349 for the medical expenses incurred, directly or indirectly, to repair the hernia.

Rachal continues to complain about his condition and the pain and suffering he experiences. Nevertheless, he refuses to subject himself to the cure suggested by Hovnatanian. Our future damage award includes the anticipated pain and suffering. We will not grant an additional amount for surgical intervention that has yet to be elected. Were we to do so, the general damage award would be appropriately reduced.

It is suggested that the attorneys present a form of judgment to the court that reflects the conclusions set forth in this ruling.

Alexandria, Louisiana

16 November 2005

_____
F. A. LITTLE, JR.
UNITED STATES DISTRICT JUDGE